UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00820-GNS

KEITH WEST                                                                      PLAINTIFF

v.

LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motions to Dismiss (DN 22, 23).  This

matter is ripe for adjudication.  For the reasons below, the motions are **GRANTED**.

I.        **STATEMENT OF FACTS AND CLAIMS**

This action was filed by Plaintiff Keith West ("West") against Defendants Louisville

Jefferson County Metro Government ("Louisville Metro"), Louisville Police Detectives Mark

Handy ("Handy"), Michael McHugh ("McHugh"), James Clark, Gary Mason, Jim Seng ("Seng"),

Jenny Assef ("Assef"), Louisville Police Sergeants Jessie Cummins ("Cummins"), Jim Woosley

("Woosley"), Robert Fraction ("Fraction"), Jay Pierce ("Pierce"), Louisville Police Major James

Griffiths ("Griffiths"), and Louisville Police Lieutenant Gene Sherrard ("Sherrard").  (Compl. ¶¶

22-23, DN 1).  West brings claims under 42 U.S.C. § 1983 for violation of due process, violation

of his Fourth and Fourteenth Amendment rights relating to fabrication of evidence, unreasonable

prosecutorial seizure, supervisor liability, failure to intervene, conspiracy to deprive constitutional

rights, and a *Monell* claim against Louisville Metro.  (Compl. ¶¶ 288-339).  West also asserts state

law claims for negligent supervision, respondeat superior, malicious prosecution and intentional or reckless infliction of emotional distress.  (Compl. ¶¶ 340-60).

In 1992, nineteen-year-old West was kidnapped by Gerald White ("White") and Kevin Harraway ("Harraway") who subsequently threatened to sodomize him.  (Compl. ¶¶ 31-32).  While trapped in a moving vehicle, West rebuked their advances and Harraway choked West.  (Compl. ¶¶ 31-32).  White, who was allegedly driving, asked Harraway to "grab that thing"—a gun—and threatened to rape West.  (Compl. ¶¶ 31-32).  West, however, was able to grab the gun and shot his two attackers.  (Compl. ¶ 38).  Because he legitimately feared for his life and was acting in self-defense, West alleges he was wrongly convicted and jailed for more than six years.  (Compl. ¶¶ 1-2).  West claims that his wrongful conviction was the result of systematic conduct in the Louisville Police Department ("LPD").  (Compl. ¶ 7).  West also alleges that LMPD officers, including Handy—who oversaw the LMPD investigation—manipulated false statements from witnesses, fabricated evidence and withheld exculpatory evidence to ensure West's conviction. (Compl. ¶¶ 8, 12).

On February 24, 1995, West was convicted of two counts of wanton murder and sentenced to life in prison.  (Compl. ¶ 227).  In July 1997, West was granted a new trial based on the Commonwealth's failure to disclose that a key witness was under indictment at the time of her testimony. (Compl. ¶ 233).  West alleges that Handy presented falsified evidence to the grand jury in December 1997 to get West indicted for two counts of first-degree manslaughter.  (Compl. ¶¶ 236-38).  West claims that because of the fabricated evidence against him, he entered an Alford plea to first degree manslaughter and was eventually released from prison on October 30, 1998. (Compl. ¶¶ 241, 243).

West maintained his innocence and in 2019 he filed a petition for pardon to Kentucky Governor Matthew Bevin ("Governor Bevin").  (Compl. ¶ 257).  In December 2019, Governor Bevin granted West's request and issued him a pardon.  (Compl. ¶ 260).[1]

## II.    JURISDICTION

Jurisdiction for the federal claims is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)).  The nonmoving party, however, must plead more than bare legal conclusions. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).  In order to survive a 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The pleading need not contain detailed factual allegations, but the nonmoving party must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted).

---

[1] Prior to requesting a pardon, West sought to vacate his manslaughter conviction, which the trial court denied.  (Def.'s Mot. Dismiss Ex. A, at 6, DN 23-3).

# IV.    DISCUSSION

## A.    Section 1983 Claims

"42 U.S.C. § 1983 establishes tort liability for the deprivation of federal rights by persons acting under the color of state law." *Carr v. Louisville-Jefferson Cty. Metro. Gov't*, No. 3:20-CV-818-CRS, 2021 WL 3115389, at *2 (W.D. Ky. July 22, 2021).  Section 1983 claims, however, "are not cognizable where a judgment in favor of the plaintiff would necessarily imply invalidity of the plaintiff's state conviction or sentence." *Id.* (citing *Harper v. Jackson*, 293 F. App'x 389, 391 (6th Cir. 2008)).  As the U.S. Supreme Court has stated:

> When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

*Heck*'s invalidity requirement stems from the favorable termination condition of common-law malicious prosecution.  *Id.* at 485-86.  "The two requirements are analogous and serve the same purposes." *Snyder v. City of Alexandria*, 870 F. Supp. 672, 686 (E.D. Va. 1994) (internal citation omitted) (citing *Heck*, 512 U.S. at 485-86).  Favorable termination of the criminal offense must be shown in both malicious prosecution and Section 1983 actions because "civil tort actions are not the appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ." *Heck*, 512 U.S. at 486.

According to *Heck*, in order for a plaintiff to prove that the underlying conviction or sentence has been invalidated, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a

4

writ of habeas corpus." *Id.* at 485 (citation omitted).  West argues that his pardon from Governor Bevin "expunged by executive order" the conviction, which therefore has been invalidated.  (Pl.'s Resp. Defs.' Mots. Dismiss 8, DN 24).

Courts have examined pardons in light of their scope in the state where the pardon was issued to determine whether the pardon has the same effect as expunging the conviction by executive order.  *Snyder*, 870 F. Supp. at 677, 686; *Savory v. Cannon*, 947 F.3d 409, 429 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 251; *Wilson v. Lawrence Cty.*, 154 F.3d 757, 759-60 (8th Cir. 1998).  Thus, whether West's pardon constitutes an invalidating event requires an analysis of gubernatorial pardons in Kentucky.  Kentucky law defines a pardon as "[t]he act or an instance of officially nullifying punishment or other legal consequences of a crime."  *Anderson v. Commonwealth*, 107 S.W.3d 193, 196 (Ky. 2003) (alteration in original) (citing *Black's Law Dictionary* (7th ed. 1999)).  The power to issue pardons is granted in Section 77 of the Kentucky Constitution, which vests the governor with "the power to remit fines and forfeitures, commute sentences, grant reprieves and pardons, except in case of impeachment . . . . "  Ky. Const. § 77.  This executive power includes the power to issue full, conditional, or partial pardons.  *Anderson*, 107 S.W.3d at 196.

"[W]hile a pardon will foreclose punishment of the offense itself, it does not erase the fact that the offense occurred, and that fact may later be used to the pardonee's detriment."  *Fletcher v. Graham*, 192 S.W.3d 350, 363 (Ky. 2006).  Thus, collateral consequences of the offense may still prevail, such as disbarment or impeachment as a convicted felon.  *Id.* at 362-63.  In other words, "a pardon cannot take away the consequences of the act where private justice is principally concerned."  *Nelson v. Commonwealth*, 109 S.W. 337, 338 (Ky. 1908) (citation omitted).

The limits of a governor's general pardon under Kentucky law are best demonstrated in *Harscher v. Commonwealth*, 327 S.W.3d 519 (Ky. App. 2010).  There, the court recognized that

5

while a pardon removes legal punishment and "restor[es] one's civil rights, it does not wipe out either guilt or the fact of conviction." *Id.* at 522 (citing *Nelson*, 109 S.W. at 338). Because the governor's pardon did not "erase the fact that the individual was convicted, [the court] conclude[d] that a pardon does not entitle an individual to expungement of his criminal record." *Id.* Recognizing different treatments of pardons in Ohio, Indiana, and Pennsylvania, the court affirmed Kentucky precedent that "a pardon does not automatically entitle the pardoned individual to expungement of his court records." *Id.*

The determination of whether West's pardon invalidated his conviction also requires review of the specific language of the pardon. *Snyder*, 870 F. Supp. at 677, 686; *Savory*, 947 F.3d at 429; *Wilson*, 154 F.3d at 759-60. West's pardon from Governor Bevin states:

> Whereas, I hereby grant Keith West the full and unconditional pardon he has requested.
>
> Now, Therefore, I, Matthew G. Bevin, Governor of the Commonwealth of Kentucky, in consideration of the foregoing, and by the virtue of the authority vested in me by Sections 77, 145, and 150 of the Constitution of the Commonwealth of Kentucky, do hereby unconditionally pardon Keith West and return to him all rights and privileges of a citizen of this Commonwealth.

(Pardon 1, DN 23-4). Recently, this Court dealt with a similar pardon by Governor Bevin which was a "full and unconditional pardon" and made no reference to the pardonee's innocence or expungement of her record. *Carr*, 2021 WL 3115389, at *2. This Court differentiated this type of pardon from those in *Wilson* and *Snyder*, reasoning that the invalidating language and effect of Kentucky pardons is not as strong as the pardons in those cases. *Id.* at *4. This Court declined to adopt the Seventh Circuit decision that a pardon in Illinois is synonymous with the phrase "expunged by executive order" and thus "decline[d] to find that the mere issuance of a pardon, without language that questions or discredits a judicial finding of guilt, appropriately invalidates a criminal conviction for purposes of *Heck*." *Id.* at *5. Governor Bevin's pardon of West is identical

to that granted in *Carr*. *Id.* at *2 ("I . . . do hereby unconditionally pardon Johnetta Carr and return to her all rights and privileges of a citizen of this Commonwealth."). Consistent with the ruling in *Carr*, West's pardon does not invalidate his conviction.

Plaintiff primarily relies on three federal cases to argue that his conviction has been invalidated. (Pl.'s Resp. Defs.' Mots. Dismiss 8-13). The pardons in the first two cases—*Snyder v. City of Alexandria*, and *Wilson v. Lawrence County*—are easily distinguishable from West's pardon. As pointed out in *Carr*, the governor's pardon at issue in *Snyder* was an absolute pardon "explaining that, while he found no fault with the prosecution or the jury's verdict as rendered on the evidence available at the time, the DNA test results place a cloud upon the verdict and a raise a doubt concerning the ultimate issue of whether [] Snyder is guilty of the crime for which he was convicted." *Carr*, 2021 WL 3115389, at *3 (citing *Snyder*, 870 F. Supp. 677). The pardon in *Wilson* explicitly stated that "it is clear [Wilson] did not commit the crime for which he has been incarcerated" and that the pardon "obliterates said conviction." *Carr*, 2021 WL 3115389, at *4 (citing *Wilson*, 154 F.3d at 761). In both cases, the pardons addressed the plaintiff's actual innocence in a way that Governor Bevin's pardon of West does not.

While the courts in *Wilson* and *Snyder* found that the pardon at issue essentially "expunge[d] by executive order" the convictions, Kentucky courts have specifically held that a general pardon does not entitle the pardonee to expungement. *Harscher*, 327 S.W.3d at 522; *Fletcher*, 192 S.W.3d at 363 ("[W]hile a pardon will foreclose punishment of the offense itself, it does not erase the fact that the offense occurred, and that fact may later be used to the pardonee's detriment."). It necessarily follows that while a pardon which explicitly addresses innocence may constitute expungment by executive order, a general pardon in Kentucky does not have the same effect.

Kentucky gubernatorial pardons are treated differently than those of some other states. As discussed in *Harscher*, unlike Ohio, Indiana, and Pennsylvania, Kentucky courts have consistently held that "a pardon does not automatically entitle the pardoned individual to expungement of his court records." *Harscher,* 327 S.W.3d at 522. The pardon issued by Governor Bevin did not invalidate West's criminal conviction. Absent invalidation of that conviction, he cannot pursue his Section 1983 claims, which will therefore be dismissed.

**B.      State Law Claims**

The Court also has supplemental jurisdiction over Plaintiff's state law claims. In their motion, Defendants seek dismissal of all state law claims.

**1.      *Malicious Prosecution***

West also asserts a state law claim for malicious prosecution against all Defendants. (Compl. ¶¶ 348-54). To prevail on a malicious prosecution claim in Kentucky, a plaintiff must prove:

> (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (citation omitted). West argues that his pardon constitutes a "termination of such proceedings in the defendant's favor." *Id.*

A termination is not favorable "merely because a party complained against has prevailed in an underlying action." *Davidson v. Caster-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 605 (Ky. App. 2006) (citation omitted). For a successful malicious prosecution claim, the termination must reflect the plaintiff's "innocence of the alleged wrongful conduct." *Id.* "If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged

misconduct – the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." *Id.* For example, in *Alcorn v. Gordon*, 762 S.W.2d 809 (Ky. App. 1988), the court found that dismissal of a suit for technical or procedural reasons does not constitute a favorable termination because it does not "reflect on the merits of the case." *Id*. at 812.

West's pardon from Governor Bevin makes no reference to his guilt or innocence. As discussed above, a general gubernatorial pardon in Kentucky does not necessarily indicate that the recipient is innocent. *Fletcher*, 192 S.W.3d at 363 (noting that a pardon does not negate the offense, which can still be used to the recipient's detriment). In *Harscher*, the court recognized that a pardon does not nullify the conviction or the finding of guilt. *Id.* at 522. Since West's pardon in this instance did not vitiate his conviction, he cannot satisfy the requirement that the criminal action was decided in his favor and consequently cannot pursue a claim for malicious prosecution.

### 2.   *Negligent Supervision*

The Complaint includes a Kentucky state law claim for negligent supervision against Griffiths, Woosley, Fraction, Pierce, Sherrard and Louisville Metro. (Compl. ¶¶ 341, 343). The Complaint alleges that Griffiths, Woosley, Fraction, Pierce, and Sherrard breached their duty to properly train and supervise officers of the LPD. (Compl. ¶ 341). West alleges that the "municipal defendants and the supervisory defendants were grossly negligent in the training, supervision and discipline of Defendants, resulting in West being deprived of his right to due process, and his right to be free from false arrest, false imprisonment, and wrongful conviction." (Compl. ¶ 343).

"Kentucky has adopted the Restatement (Second) of Agency's definition of the tort of negligent supervision." *Grego v. Meijer, Inc*., 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001) (citations omitted). The Restatement defines negligent supervision as "[a] person conducting an activity

through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the supervision of the activity." *Id.* (quoting Restatement (Second) of Agency § 213(c) (1957)).  As this Court has noted, "[t]he tort of negligent supervision is a second tort that derives from a tort committed by the person negligently supervised."  *Id.*

West's negligent supervision claim is based upon the underlying torts of (1) violation of his right to due process, (2) false arrest, (3) false imprisonment and (4) wrongful conviction. (Compl. ¶ 343).  In supervisor liability cases "a judgment on the merits in the favor of an agent or servant is *res judicata* in favor of the principal or master."  *Divita v. Ziegler*, No. 2005-CA-001342-MR, 2007 WL 29390, at *9 (Ky. App. Jan. 5, 2007) (citation omitted).  The dismissal of West's Section 1983 due process and malicious prosecution claims above necessarily destroys the viability of his supervisory liability claim as a matter of law.  *See id.*  Furthermore, West does not plead state law claims of false arrest, false imprisonment, or wrongful conviction.  Without a properly plead underlying tort, there is nothing from which the wrongful supervision claim can be derived.  *Grego*, 187 F. Supp. 2d at 694.  Absent an underlying tort, this claim fails as a matter of law.

### 3.   *Intentional or Reckless Infliction of Emotional Distress*

West's Complaint alleges claims against all Defendants for intentional or reckless infliction of emotional distress.  (Compl. ¶¶ 355-60).  A claim for intentional infliction of emotional distress requires the plaintiff to prove:

> (1) the wrongdoer's conduct must be intentional or reckless, (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.

*Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999) (citations omitted). "[U]nder Kentucky law, when damages for emotional distress are available through another state tort claim, and the conduct was not intended to only cause emotional distress, a claim for the tort of intentional infliction of emotional distress will not lie." *Howell v. Sanders*, 755 F. Supp. 2d 789, 799 (E.D. Ky. 2010) (citation omitted). Emotional damages are available in actions for malicious prosecution. *Id.* Similarly, while West did not plead a discrete false imprisonment claim, emotional damages are available for false imprisonment as well. *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. App. 2001). Therefore, because the traditional torts of false imprisonment and malicious would have provided recovery for emotional distress for West, he cannot bring a discrete action for infliction of emotional distress. *Id.* The infliction of emotional distress claim will be dismissed.

### 4.     *Sovereign Immunity*

Defendants contend that the state claims against Louisville Metro, including the respondeat superior claim, should be dismissed under the doctrine of sovereign immunity. (Defs.' Mot. Dismiss 10, DN 23). Louisville Metro[2] is entitled to sovereign immunity on the state law claims because counties are political subdivisions of the Commonwealth, which are "clothed with the same sovereign immunity" as the state. *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. App. 2008) (internal quotation marks omitted). "The absolute immunity from suit afforded to the state also extends to public

---

[2] "Louisville/Jefferson Metro Government is the post-merger successor to the City of Louisville . . . ." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 14 (Ky. App. 2009).

officials sued in their representative (official) capacities . . . ." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001).

Therefore, the state law claims asserted against Louisville Metro and the LMPD officers in their professional capacities will be dismissed.

## V.    CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (DN 22, 23) are **GRANTED**, and the Complaint is **DISMISSED**.  The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 14, 2022

cc:    counsel of record